Indictment, assault and battery on John Oney, negro.
John Oney, n., was called to prove the assault and battery and *Page 572 
objected to, on the ground that there were white persons present, competent to give testimony.
The Attorney-general said, that he understood it to have been decided that where the witness called was the person on whom the offence was committed, his testimony was admissible from necessity.
The Court said, that in the case of The State vs.Whitaker, where the white person present was an accomplice, though not indicted, the court thought the party kidnapped admissible from necessity; but they had not known it extended further.
They ruled out the evidence of the negro; but, it afterwards appearing that though there were two white persons present, one of them was drunk, and the other did not see the whole of the fight, though they both knew that a blow was struck; the court now admitted the testimony of the negro.
By the Court. — The decisions on the admissibility of negro evidence appear to have been somewhat conflicting; or, at least, the loose recollections of those decisions are conflicting,a In 1787 a law *Page 573 
was passed which recognized in the negro race the right to hold property, and to obtain redress in law or equity for any injury to his or her person or property. Under this act it is said to have been held that a black man was a competent witness against a white man, to prove an offence against his own person. In 1799 the act was passed which, inall criminal prosecutions, allowed of negro testimony, where no white person competent to give testimony was present at the time when the fact charged is alledged to have been committed, *Page 574 
or where such persons cannot be produced as witnesses. Since this act the question has often arisen, whether a black person on whom a criminal offence has been committed, was not a competent witness, although white persons were present. And the decisions on this question are understood to have been conflicting. In the case of TheState vs. Whitaker, and The State vs. Griffin,
which were indictments *Page 575 
for kidnapping, the court admitted the testimony of the negroes kidnapped, although there were other white persons present participating in the crime, though such persons were not indicted.
The law of humanity is in favor of the old decisions, and we now go so far with them as to hold that even though white persons were present at the commission of a crime, if they were not in a situation *Page 576 
or position to see the act, and did not in fact observe all that happened at the time when the fact charged is alledged to have been committed, the person upon whom the crime was committed, though a negro, is a competent witness to prove it. Otherwise there will often be a failure of justice, and wrongs may be committed with impunity.
 The defendant was convicted.
a The State vs. Valentine Bender. Quarter Sessions, Kent, December term, 1793, before RICHARD BASSETT,Chief Justice, and THOMAS McDONOUGH, and DANIEL RODNEY,Associates.
The defendant, a white man, was indicted for an assault and battery committed on Phillis Miller, a negro woman.
Phillis Miller was offered as a witness for the State, to whomFisher, counsel for the defendant, objected, on the ground of the act of assembly, 3d February, 1787, and the decision of the Supreme Court, in the case of Collins vs. Hall.
 Ridgely, Attorney-general, for the State, argued that the case of Collins vs. Hall was not like the present, because it was between two white persons. This witness, on the principles of the common law, which does not discriminate as to color or religion, is admissible. The act of assembly gives the same right of redress to negroes as to whites. In cases like the present, there are two modes of redress: — 1st, by civil action; 2d, by indictment. The means of obtaining redress must likewise be given. The necessity of the case will sometimes render evidence competent which otherwise would not be good. In a suit against a common carrier, the plaintiff was admitted as a witness to prove the things put into the box, ex necessitate. (12 Vin. Abr. 24, fob 34, pl. 38.) The assault and battery in this case was committed when no third person was present. In all cases of this kind, if the negro be not admitted, there can be no proof; and, of consequence, the offence will pass with impunity.
Fisher, in reply. — A positive law should not yield to the argument of convenience. If negroes be admitted against whites, there is great danger of subornation of perjury. The cases from Viner do not apply. They are grounded on the principles of common law. The present question arises from the act of assembly, and the decision of the Supreme Court in Collins vs. Hall is in point.
BASSETT, C. J. — The court have found themselves under some embarrassment as to the question before them, and could have wished for more time to consider the subject.
It is the opinion of a majority of the court, that the witness is admissible, her credit to be left to the jury. At common law, she would be competent; the objection arises from the act of assembly. The whole act must be taken together. The first part of the eighth section says, that "no slave manumitted agreeably to the laws of this State, or made free in consequence of this act, or the issue of any such slave, shall be entitled to the privilege of voting at elections, or of being elected or appointed to any office of trust or profit, or to give evidence against any white person, or to enjoy any other rights of a freeman, other than hold property, and to obtain redress in law and equity for any injury to his or her person or property." The latter part of the section gives to them the same rights which belong to white freemen, "to hold property and obtain redress in law and equity, c." and this latter part controls or qualifies the former.
Negroes are allowed the same redress for injuries to their persons as whites. Indictment is one mode or redress for an injury to the person, principally useful where the party injured is the only witness of the fact necessary to be proved.
The act giving to negroes this right of redress must be construed to allow the means absolutely necessary to obtain redress.
We still allow sufficient operation to the first part of the section, for we do not mean to say that a negro is a witness between two white persons; nor, in cases like the present, where other proof can be procured; but only in the case where justice must otherwise fail. Rodney, J., concurring — McDonough, J. dissenting:
Per Curiam. — Witness admitted.
Sarah Collins vs. Joshua Hall. Supreme Court, Sussex, November term, 1793. Before GEORGE READ, ChiefJustice, PETER ROBINSON and JOHN CLAYTON, Associates.
Upon the trial of this cause, after several witnesses had been examined upon the part of the plaintiff, one Levin Thompson, negro, was offered as a witness upon the same side.
Bayard, counsel for the defendant, objected that the witness being a negro, was rendered incompetent by the act of assembly, passed the 3d of February, 1787; the eighth section of which enacts "that no slave manumitted agreeably to the laws of this State, or made free in consequence of this act, or the issue of any such slave, shall be entitled to the privilege of voting at elections, or of being elected or appointed to any office of trust or profit, or to give evidence against any white person, or to enjoy any other rights of a freeman, other than hold property, and to obtain redress in law and equity for any injury to his or her person or property."
It was hereupon proved upon the part of the plaintiff, that Thompson was a freeman; that his mother and grandmother had been free; and that they lived in, and he came from, the State of Maryland.
The counsel for the defendant contended, that the witness was still incompetent. He said that slavery being permitted by the laws of the State, it was a necessary consequence that the condition of slaves should be discriminated from that of masters. A plain line was, therefore, drawn between them by the laws. Their interests and rights were different, and frequently opposed; and it was, therefore, necessary to withhold from slaves some privileges, which it was possible in many cases they might exercise without injury, or perhaps to the advantage of society. He admitted there was nothing in a negro which naturally disqualified him from giving as credible and instructive evidence as a white person; but the law having bestowed unequal rights and favors upon the whites, had rendered them objects of jealousy and envy to the blacks; and therefore, as long as the relation of master and slave was suffered to continue, it was sound and essential policy to communicate to the blacks no rights which might endanger the safety of the whites. That the low and degraded situation of the slaves debased their minds, and weakened or effaced those principles which gave credibility to the testimony of a witness. Slavery being the general condition of the negroes, and the connections and society of free blacks consisting principally of slaves, the same policy which would exclude slaves extends to free blacks. Upon such grounds was the eighth section of the act of 1787 made, which embraces, upon a fair construction, the case of this witness. Though his mother and grandmother were free, yet the presumption is, that he is the issue of a slave, as slavery was the universal state in which negroes were brought into this country. And, though the witness became free by the laws of Maryland, yet he is within the spirit of the act, as there is the same reason for his exclusion, as that of those freed by the laws of this State. It would be absurd and contradictory in practice to admit a free negro of Maryland, and exclude one of Delaware.
Upon the other side it was argued by Vining, for the plaintiff, that the law should be strictly coustrued, as it was founded on an unjust and absurd principle. The blacks are as competent by nature, and should not be rendered less so by law, to give evidence, than the whites. Becoming freemen, the common rights of citizens should be extended to them; and especially there is no reason to withhold from them the right to give evidence. The whites are the judges, and by admitting negroes as witnesses, we increase without danger the means of information and justice. The court are to decide a question of law, not of policy; and the act of assembly does not reach the case of the present witness. It does not appear that he is the issue of a slave; or, if he is, that he or his ancestors were freed by any law of this State.
READ, Chief Justice. — This witness is a negro, and it has always been the policy of the State to exclude negroes from the rights of citizenship, and from giving evidence where whites are concerned. There are several instances where the situation and rights of negroes and mulattoes are rendered by the laws of the State different from those of the whites. By the act of assembly contained in vol.
1, 102-3, (Ed. 1797,) the trial by jury, even in capital cases, is taken from them. Fornication between blacks and whites is more severely punished, than between persons of the same color. (1vol. 109.) A black cannot be appointed to inflict any corporal punishment upon a white person. (479.) The fourth article of the constitution gives a right to vote only to white freemen. The act of 1787 denies to negroes the privilege of voting at elections, of being chosen or appointed to any office of trust or profit, or giving evidence against any white person. There is no doubt but this man must be taken for the issue of a slave; and, though he were made free by the laws of Maryland, he is clearly within the spirit of the act of 1787. It would be absurd to suppose that the legislature intended to discriminate between the capacity of freed black men, according to the place from which they came; and that it would bestow rights on those emancipated by the laws of other States, which it denies to such as were freed by its own. Robinson, J., of same opinion.
Per Curiam. — The witness is incompetent and must be rejected.
State vs. Parsons, negro. Quarter Sessions, Kent, May term, 1794. Indictment for an assault and battery upon Nathan Keach, a white man.
David Hutt, a free negro man, was offered as a witness for the defendant.
Bayard, for the State, objected to the competency of the witness, on the-ground of the act of assembly of February, 1787; and cited the case of Collins vs. Hall.
Miller, for the defendant, relied on the case of The State vs. Bender, and stated that Hutt was the only witness present at the transaction.
Per Curiam. — Collins vs. Hall has no application to the case. The State vs. Bender was decided on the principle of necessity. The witness is not seeking redress, and therefore not within the clause of the act of assembly relied on by the court in The State vs. Bender.
We consider him incompetent on the ground of the act of assembly.